# EXHIBIT B

## Complaint to TransUnion, LLC

**STATE OF MINNESOTA**
**County of Hennepin**

**DISTRICT COURT**
**Judicial District: Fourth**
Case Type: Civil Other/Misc.

---

Case No: _____

Araceli Rodriguez-Sanchez,
*Plaintiff,*

vs.

**COMPLAINT**

Trans Union, Inc.; Receivables
Performance Management, LLC,
*Defendants.*

---

Plaintiff, by and through her attorneys, for her Complaint against Defendants upon personal knowledge as to her own facts and conduct and on information and belief as to all other matters, states and alleges as follows:

**Nature of the Case and Defendants' Unlawful Business Practices**

1.     Ms. Rodriguez-Sanchez's experience with Defendants is typical of those of too many American consumers. Ms. Rodriguez-Sanchez is presently seeking to buy a home only to be told that Defendant Receivables Performance Management ("RPM") has furnished to the Defendant consumer reporting agencies ("CRAs") negative information about her regarding an alleged debt originating from a cell phone account. The CRAs in turn reported that Ms. Rodriguez-Sanchez recently had a debt held by RPM. The effect of

1

this false information has portrayed Ms. Rodriguez-Sanchez as a substantial credit risk which potential lenders should avoid.

2.      On July 10, 2020, Ms. Rodriguez-Sanchez acted to correct the information by sending a letter to RPM disputing the debt it alleged she owed.

3.      RPM admitted they received Ms. Rodriguez-Sanchez's dispute on July 16, 2020. However, by August 17, 2020, the account had still not been noted as disputed on a consumer report prepared by Trans Union.

4.      Trans Union in turn made no effort to substantiate the information and instead parroted the response of RPM and thereafter informing Ms. Rodriguez-Sanchez that the information was verified as accurate and would continue to be reported to potential creditors.

5.      In fact, the Trans Union continued to report the false information to all of Ms. Rodriguez-Sanchez's potential creditors, casting Ms. Rodriguez-Sanchez as a debtor unable to pay her obligations and therefore an unworthy borrower who should not be lent money.

6.      Indeed, Ms. Rodriguez-Sanchez was denied credit on at least one occasion and fully expects any future requests for credit to be denied.

## Statement of Jurisdiction and Venue

7.      This Court has original subject-matter jurisdiction over this action pursuant to 15 U.S.C. § 1681 et. seq., The Fair Credit Reporting Act ("FCRA"), which permits consumers to file suit in the courts of their respective states.

2

8.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in ther district.

**Applicable Statutory Law**

9. The FCRA's requirements apply to any Credit Reporting Agency ("CRA"), which Section 603(f) defines as:

> "[A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."

15 U.S.C. § 1681a(f).

10. FCRA Section 603(d) defines a "consumer report" as:

> "[A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under Section 604."

15 U.S.C. § 1681a(d).

11. CRAs that sell consumer reports must comply with the FCRA. FCRA Section 607(b), 15 U.S.C. § 1681e(b), requires a CRA to follow reasonable procedures to assure the maximum possible accuracy of consumer report information, including whether a consumer has disputed information from a furnisher.

12. Furnishers of information to CRAs must also comply with certain aspects

3

of the Act. Section 623 of the FCRA, 15 U.S.C. § 1681s-2, addresses the duties of persons who furnish information to the CRAs. The section of the Act requires furnishers to note that information has been disputed if the completeness or accuracy of any information furnished to any CRA is disputed to such person by a consumer.

## Parties

13.    Plaintiff is an adult resident of Minnesota.

14.    Defendant Trans Union, Inc., is a foreign consumer reporting agency registered in the State of Delaware with a service of process address listed as 2345 Rice Street, Suite 230, Roseville, Minnesota.

15.    Defendant Receivables Performance Management, LLC, is a foreign limited liability company, and a furnisher of consumer data to major CRAs. Receivable Performance Management has a registered address listed as 1010 Dale Street North, Saint Paul, Minnesota.

16.    Plaintiff is informed and believes, and thereon alleges, that at all times relevant Defendants conducted business in the State of Minnesota and in the County of Hennepin.

## Facts Common to All Claims

17.    Plaintiff is an individual "consumer" as defined by 15 U.S.C. § 1679a(1) and § 1681a(c).

18.    The Defendant Trans Union is "consumer reporting agency" as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681a(f) because the company is in the business of

assembling and analyzing consumer information before selling consumer reports to third parties.

19.    The Defendant RPM is a "furnisher" subject to the requirements of 15 U.S.C. §1681s-2, because they reported information pertaining to the disputed debt to the CRAs including Defendant Trans Union.

20.    Defendant TransUnion prepared and issued consumer reports concerning Plaintiff that included false and inaccurate information, by not including the fact that Plaintiff disputed the validity of the debt held by RPM.

21.    Interestingly, Experian had noted the fact that Plaintiff disputed the information pertaining to the alleged debt owed to RPM in its consumer report for Plaintiff.

22.    Nevertheless, various individuals seeking to lend to Plaintiff consulted consumer reports furnished by Trans Union containing the false information at issue.

23.    The direct result of Defendant's issuance of consumer reports to potential lenders containing the false information at issue, including information not reasonably verified, has inflicted significant damage to the reputation of Plaintiff and Plaintiff's ability to borrow money and conduct commerce.

24.    Specifically, Defendant's false reports have to date prevented Plaintiff from obtaining a credit account and even delayed her purchasing of a home.

25.    As a direct result of Defendant's conduct, Plaintiff has suffered from increased stress, anger, frustration, anxiety and, the loss of the ability to borrow money on favorable terms and thereby loss of a means of improving her social and economic position.

**Facts Regarding Violation of Section 607(b) of the FCRA**

**15 U.S.C. § 1681e(b)**

26.    Section 607(b) of the FCRA, 15 U.S.C. 1681e(b) expressly requires a CRA to

follow reasonable procedures to assure the maximum possible accuracy of consumer

report information.

27.    Here, Plaintiff sent a dispute letters to RPM disputing the validity of the alleged

debt on July 17, 2020. RPM informed Experian that Plaintiff had disputed the debt, and

in accordance with the FCRA, Experian noted the debt was disputed on its consumer

report for Plaintiff. (see Experian Credit Report, Dated August 24, 2020.)

28.    However, Trans Union failed to include the fact that Plaintiff disputed the alleged

debt held by RPM on its consumer report. By omitting the fact that Plaintiff disputed the

alleged debt, Trans Union published an inaccurate consumer report for Plaintiff,.

29.    Upon information and belief, Trans Union failed to enact reasonable procedures to

assure maximum accuracy of information in its consumer reports, because the other

CRAs managed to note the fact that Plaintiff disputed the alleged debt on their consumer

reports.

30.    As a direct result of Trans Union failing to enact the reasonable procedures to

assure maximum accuracy, Plaintiff's consumer report contained inaccurate information

and informed Plaintiff's potential creditors that Plaintiff was at higher risk for

nonpayment of debts and therefore an undesirable credit risk.

31.    Similarly, as a further result of Trans Union failure to fulfill their statutory duty,

Plaintiff suffered personal financial loss and loss of standing in the community.

32.     Plaintiff was further harmed by incurring legal and professional fees in consulting with various experts regarding the course of action for correcting the error at issue.

33.     Finally, Plaintiff suffered from loss of personal and professional time as a direct result of Trans Union's failure to establish reasonable procedures to ensure maximum accuracy regarding the consumer report it published for Plaintiff.

**Facts Regarding Violation of Section 623 of the FCRA**

**15 U.S.C. §1681s-2**

34.     Section 623 of the FCRA, 15 U.S.C. § 1681s-2, requires a furnisher of information to give CRAs notice if the completeness or accuracy of any information furnished is disputed by a consumer. Indeed, the Act prohibits a furnisher from providing information to a CRA that is disputed by a consumer without notice that such information is disputed by the consumer.

35.     Plaintiff sent numerous of notices of disputes to Defendant RPM regarding the alleged debt, including valid requests for reinvestigation sent to the address listed by RPM for receipt of such disputes. And, Defendant RPM confirmed receipt of these disputes and notices in subsequent communications with Plaintiff.

36.     Specifically, Plaintiff sent Defendant RPM these disputes and notices on: July 10, 2020; August 1, 2020; August 26, 2020; September 23, 2020; October 9, 2020; November 5, 2020; and, November 16, 2020.

37.     In response the Defendant failed to conduct a reasonable reinvestigation and failed to put Trans Union on notice of the disputed debt without regard to truth.

38.     As a direct result of RPMs failure to give Trans Union notice of the disputed it

furnished for Plaintiff's consumer files, Trans Union informed Plaintiff's potential

creditors that Plaintiff was at higher risk for nonpayment of debts and therefore an

undesirable credit risk.

39.     Similarly, as a further result of Defendant's failure to fulfill its statutory duty,

Plaintiff suffered personal financial loss and loss of standing in the community.

40.     Plaintiff was further harmed by incurring legal and professional fees in consulting

with various experts regarding the course of action for correcting the errors.

41.     Finally, Plaintiff suffered from loss of personal and professional time as a direct

result of RPM's failure to give Trans Union notice of the disputed information it

furnished about Plaintiff.

## FIRST COUNT

### Willful Noncompliance with the FCRA

(Against All Defendants)

42.     Plaintiff incorporates by reference all of the above paragraphs of her Complaint as

though fully stated herein.

43.     The Defendant Trans Union willfully failed to comply with the requirements of

FCRA, including but not limited to:

    a.      failing to comply with the requirements of Section 607(b), 15 USC §

            1681e(b), by not following reasonable procedures to assure that consumer

            reports are prepared with maximum possible accuracy and leaving out the

            fact that Plaintiff disputed the information contained within her report.

8

44.    RPM willfully failed to comply with the requirements of the FCRA, including but

not limited to:

    a.    failing to comply with the requirements of Section 623 including its failure

        to give Trans Union notice that Plaintiff disputed the information it

        furnished to Trans Union for its consumer report.

27.    As a result of Defendants' failure to comply with the requirements of FCRA,

Plaintiff has suffered, and continues to suffer, actual damages, including economic loss,

lost opportunity to receive credit, damage to reputation, interference with her normal and

usual activities, emotional distress, anger, frustration, humiliation, anxiety, fear, worry,

and related health problems, for which Plaintiff seeks damages in an amount to be

determined by the jury.

28.    Plaintiff requests attorney's fees pursuant to 15 USC § 1681n(a).

## SECOND COUNT

### Negligent Noncompliance with the FCRA

(Against All Defendants)

45.    Plaintiff incorporates by reference all of the above paragraphs of her Complaint as

though fully stated herein.

22.    Defendant Trans Union negligently failed to comply with the requirements of the

FCRA, including but not limited to:

    a.    failing to comply with the requirements of Section 607(b), 15 USC §

        1681e(b), by not following reasonable procedures to assure that consumer

9

reports are prepared with maximum possible accuracy and leaving out the

fact that Plaintiff disputed the information contained within her report.

46.     RPM negligently failed to comply with the requirements of FCRA, including but

not limited to:

      a.  failing to comply with the requirements of Section 623 including its failure

          to give Trans Union notice that Plaintiff disputed the information it

          furnished to Trans Union for its consumer report.

47.     As a result of Defendants' failure to comply with the requirements of FCRA,

Plaintiff and all potential class members have suffered, and continue to suffer, actual

damages, including economic loss, lost opportunity to receive credit, damage to

reputation, invasion of privacy, interference with normal and usual activities, emotional

distress, anger, frustration, humiliation, anxiety, fear, worry, and related health problems,

for which Plaintiff seeks damages in an amount to be determined by a jury.

24.     Plaintiff requests attorney's fees pursuant to 15 USC § 1681o(a).

**Prayer for Relief**

    WHEREFORE, Plaintiff, by and through her attorney, respectfully prays for

judgment in favor of Plaintiff and against Defendant as follows:

    a.     all actual compensatory damages suffered;

    b.     statutory damages in an amount up to $1,000.00 per violation per plaintiff,

          pursuant to 15 U.S.C. §1681n;

    d.     injunctive relief prohibiting such conduct in the future;

    e.     reasonable attorney's fees, litigation expenses, and cost of suit; and

f.      any other relief deemed appropriate by the Honorable Court.


Dated: April 22, 2021

**HUTTON MADGETT, PLLC**

s/ David J.S. Madgett
David J.S. Madgett (#0390494)
2450 333 S. 7th Street, Suite 2450
Minneapolis, MN 55402
(612) 470-6529
dmadgett@madgettlaw.com

**ROBERT R. HOPPER & ASSOCIATES, LLC**

/s/ Kyle P. Hahn
Kyle P. Hahn, Esq. (#399588)
Jason S. Juran
333 South 7th Street, Suite 2450
Minneapolis, MN 55402
Telephone: (612) 455-2199
Kyle.hahn@robertrhopper.com

**ATTORNEYS FOR PLAINTIFF**

**ACKNOWLEDGMENT**

11

I hereby acknowledge that costs, disbursements, and reasonable attorney and witness fees may be awarded pursuant to Minn. Stat. § 549.211, to the party against whom the allegations in this pleading are asserted.

s/David J.S. Madgett

## REQUEST FOR JURY TRIAL

Plaintiff requests a trial by jury on all issues in this matter.